I have an admission this morning. Mr. Osler, you come forward, approach the podium, and I shall invite Judge Wallace to make a motion, if he wishes to. Thank the court. We have before us today one of my clerks, who has been with me for a very long time. In fact, she was a student in the law school where I taught up in New York, and she was a clerk for me up at the Court of International Trade before she came here. So I can say with some certainty that when I move the admission of Carrie Ross, who was a member of the bar in good standing in the highest courts of New York and New Jersey, I have knowledge of her credentials, and I'm completely satisfied that she will possess the necessary qualifications. Thank you, Judge Wallace. We'll put the matter to a vote. Judge Press? Well, I would just only add, because we have the good fortune of being neighbors to Judge Wallace Chambers on the eighth floor, I, too, have had the pleasure of getting to know Ms. Ross a bit, and I enthusiastically support the motion. And as do I, it is my great pleasure to grant Judge Wallace's motion. Now, will you approach the clerk, please, for the oath? I do solemnly affirm that you will comport yourself as an attorney and counsel to this court, uprightly and according to law, and that you will support the Constitution of the United States of America. Thank you. Welcome to the Bar of the Court. We look forward to seeing more of you on that side of the Constitution. The first case, this argued case this morning, is number 131112, Irwin Industrial Tool Company against Baibo Industries Incorporated. Mr. Dukowitz. Good morning, Your Honor. May it please the Court, there's a single issue to be considered here, and that is whether there was evidence presented to the finder of fact in the lower court that there was a material issue of fact that needed to be resolved in order to avoid a summary judgment, which was granted by the lower court. The plaintiff in the case, the defendant in that case. Mr. Dukowitz, at page 9 in the blue brief, you asked the court to take judicial notice of an Internet website, but you don't cite any authority for that proposition. What authority do you have that we can take judicial notice of an Internet website? None, Your Honor, just that it had been my experience in the lower courts that courts could take judicial notice of commonly available facts that are available to the public. It had been argued. There had to be indicia of reliability, do there not? I would imagine that could be the case if, however, the document that was presented was produced by one of the parties or by an employee of the party or by the opposing side, then I would imagine that the reliability wouldn't necessarily be at issue. In fact, the website which I presented to the court was found in what's called the Wayback Machine or archival research. So, in other words, it's a web system that essentially crawls the web. You're aware of it. Okay, so you understand that it is essentially a non-party that produces a list of documents that are produced in a normal course of business and just lifted off the Internet. If it turns out to be important to our conclusion, we can invite briefing on the point. Please proceed. Can I just, I'll interrupt then on another point, which is the judge here seems to me to have done quite a thorough job in terms of dealing with your arguments. And on some of them he concludes that there's no corroboration for the assertions you're making. And on some points he just says, well, even if there's corroboration, that's not germane or important to what was really inventive with regard to the Lennox patents. So, you want to take either one of those, particularly the last point. He points to all of the details of that patent and how what you're talking about really isn't necessarily relevant to those inventive aspects of the Lennox patent. I think one of the points to consider is that there's two steps to the inventive process. The first step is the overview or the idea, if you will, of something. And then the second step is the reduction to practice. I think the judge was looking at the reduction to practice, which follows the general concept is the word I was looking for. So, in other words, you can be an inventor if you introduce a concept, and you could also be the inventor if you introduce the final product. But the judge was not looking at the conceptual side of it. What, in your view, how would you characterize that conceptual thought? Conceptual thought, the court has defined it as saying that. No, I don't mean as a matter of law. I mean with regard to these patents. Well, the conceptual idea is the fact that in his disclosure document, which was filed with the patent office in July of 2004, Mr. Bebo said that he talked about his tank handle technology. First, he developed a flat tank handle that just hooked onto the tank or was hung from the gas passageway. And then he filed a disclosure document where he said this tank handle technology can be placed on the shell of the regulator. Now, what the Lenox patent did was exactly that. They took the handle and put it on the shell of the regulator. Conceptually, nobody had done that before. Bebo had disclosed it, and he had numerous conversations, which is not disputed, with Lenox over a period of almost a year. And he had many discussions reviewing his website with Mr. Slosher. And Mr. Slosher states in his depositions he can't recall what they talked about, but Mr. Bebo says that he did. Did Lenox say in its communications, don't tell us anything that's proprietary? I'm sorry, I didn't hear you. I said, did not Lenox say in its communications right up front, don't tell us anything that's proprietary that you want protected? No. Mr. Bebo had looked at a website, and a website from Lenox early on had invited inventorship, which was one of the issues of the case that was struck down by the lower court. They said there was no contract issue here. But at that time, Lenox was inviting inventors to come and talk to them and to tell them their ideas. And on their website, they said, we will treat you fairly, in which case Mr. Bebo felt that he could disclose this to them, and he did, after he filed his nondisclosure with the Patent Office. Well, the district court said about that point, among other things, the ideas for the tank handle advanced by Mr. Bebo and disclosed to the Patent Office, Lenox, or any others, did not involve any sort of gauge and regulator encasement, and thus did not involve the core invention of the Lenox handle. Why is that not correct? Well, I think the judge was looking at the final patent, and he was looking at Bebo's patent, which was a flat handle. The judge overlooked the disclosure document, the language. He quoted some of the language, but he didn't follow up with the rest of the language, which is really the important language where Bebo talks about putting the handle on the shell of the regulator. And then he also produced some other documents at 1266, which is in the appendix, which is a drawing. The drawing was also cited by Lenox in their brief, but they cut out the bottom part. And the bottom part is also a reiteration saying, in drawing the picture, he showed the handle, and then you'll notice there's an arrow, and it says grip with an arrow pointed off to the left. What that shows, and then below that, it says shell of regulator with an arrow, indicating that the handle could be put on the shell of the regulator. And then underneath it, he writes, any and every regulator by Victor Turbo and other producers will or should have my hand-handled technology incorporated into the design of the regulator, regulated or not, or attached to the shell of the regulator. This also was filed in July of 2004 before the discussion with Lenox. After July, Mr. Bebo, in his affidavit, said he talked with Mr. Schlosser and told him what exactly his invention was and one of these things. Now, in response to the question, the judge was looking at the flat plate. The judge was focused on what was the final product of that patent rather than what the disclosure was. And in the disclosure document, or in that patent itself, it mentions at column 9, lines 17, it says, or at least part of the pressure regulator mechanism or the flow regulator mechanism of the tank. So, he actually put that in the patent itself. The court did not see that and the court, I think, focused rather on saying, well, your finished product was a flat handle. But the court did not look to what Mr. Bebo was actually teaching in his disclosure or what was actually mentioned in the patent language. Mr. Dukowicz, let me take you back to my prior question because you said that there was no such communication. I'm going to direct you to 1350 in the record, which is what I thought I'd remembered seeing, which is a communication from Benzamatic, which is part of Newell Rubbermaid, in which they say, Dear Chris, please do not send Benzamatic any confidential information. We will not review anything you submit to us on a confidential basis. What is the date on that? There is no date on it. Are you not familiar with your record? I don't have the whole record in front of me, but if it doesn't have a date on it, I cannot tell. Because I know Mr. Stepanczyk, the attorney for Lenox, in March, two days after they filed their patents, sent a letter to Mr. Bebo saying, please do not send us any information. And my understanding and my recollection of the record was that was the first time they said don't send anything after they had gone ahead and filed three applications on information that Mr. Bebo had given them. That's why I asked. I don't have the record in front of me. I apologize. Well, I guess that's that. Please proceed. Do you wish to save the rest of your time for rebuttal, or is there anything else you need to tell us at the moment? Well, the last issue was the corroboration with the argument posed by Lenox was that the documents or the lack of documents that Lenox does not have is not relevant to the inventorship issue. And I think it goes also toward the credibility issue and the reliability issue of the documents that Lenox has produced. In other words, the drawings which have the pencil and dates that are unsupported by any other witness or signature. There's four or five documents that show up on a stack of 36 documents from Appendix 314 to 346. The only documents that have a pencil and date are documents related to this case. In other words, there's other scribbles and scratches of different handle designs. But the only ones that have a date are the dates that are pertinent here. So the question is, were those dates penciled in afterwards? And I think that goes to the credibility and believability. And if you can't believe what the other side is saying, does that material fact raise? And that's reserved the rest of my time. Okay. Thank you, Mr. Junkowicz. Ms. Harris. Good morning, Your Honors. May it please the Court. Rachel Ayers for the Affiliate Lenox. Mr. Junkowicz is correct. There's only one issue in this case, and it's whether Thiebaud provided the corroborating evidence that he needed to withstand the motion for summary judgment. He simply didn't do that. He needed to show conception of the novel and non-obvious ideas of Lenox patents and communication of those conceptions and inventive ideas that he had to Lenox. He didn't do that. Well, those are laws that were established in the interference context. Here we have an issue of possible misappropriation, which turns on its own facts and laws. Correct, but it's misappropriation in the context of co-inventorship. That's the only issue that's left in this case. Mr. Thiebaud did have a number of state law claims, contract tort claims below. The judge ruled on those, dismissed those claims, and Mr. Thiebaud didn't appeal. So the only issues that are left are the issues that were decided on summary judgment, and that was Lenox's declaratory counts for that Thiebaud was not a co-inventor. And that's the only issue that's actually left in this case. The co-inventorship case law goes through those same requirements, conception and communication of that conception. And judge process, what are the novel aspects of the Lenox patent at issue? And the district court judge, he got it right. They are a gauge protector that surrounds the regulator and surrounds the fragile gauge, and that's what the Lenox patents are designed to do. They're designed to protect those elements. Mr. Thiebaud invented a handle. He invented a handle that might have attached to a regulator, but that doesn't actually surround the gauge and surround the regulator in the way that the Lenox patents claim that he could claim co-inventorship. So they're just different inventions to the extent that Mr. Thiebaud provided what he calls corroborating evidence. For example, his 2004 disclosure. The words of that disclosure and the pictures show a handle that could be cast or forged to the regulator nut or to the regulator itself. It's a handle. It's designed to facilitate transporting a pretty large tank. That's not what we invented. Lenox invented a device to protect the gauge. And so that's not actually corroboration of the inventive ideas of the Lenox patent. He's not saying that the entire concept came from him. He's saying he made a contribution. But it has to be. For Thiebaud to be a co-inventor, he had to make a significant contribution. Who says? The case law says Havering. Havering is a contribution which is involved. The degree of significance is certainly, if it's trivial, that's something else. But these are all different criteria. Again, he's not claiming conception, reduction to practice, and a separate fully developed invention, device, saying that I gave you ideas that you used, which was sufficient to entitle me to participate. But what Thiebaud provided, it does have to be a significant contribution, and it has to be something that's more than prior art. In this case, what we have is, at best, Thiebaud provided the idea to Lenox to put a handle on a tank. What's prior art? Prior art in retrospect. You say, well, I could have found this in the literature if I'd known where to look, if I'd known it was relevant. But the prior art in this case, the handle that Mr. Thiebaud allegedly provided, he invented a handle that goes on a tank. And he even told Lenox about that. Lenox disclosed that handle, pictures of that handle, to the PTO. The patents issued over that prior art. And so the inventive ideas of the Lenox patents, the ideas that Mr. Thiebaud would have had to invent or would have had to contribute to, to be a co-inventor, they'd have to see more than that prior art, more than that handle. And that's just not the case there. If he invented a handle and he told Lenox about that handle, well, Lenox disclosed the handle to the PTO, and the PTO issued the patents. And so he can't be a co-inventor if all he's contributed is prior art or told Lenox about the state of the art at the time that Lenox invented its own patent. It depends on what's prior art. If it's not known to the person who receives it, these are different questions. He hasn't entered into a patent office interference, which has its own rules for fully developed inventions. I gave you some ideas, good ideas. You used them. I have an entitlement. This isn't a matter of patent law. This raises other issues of commercial relationships. The claim in this case, though, is only one of co-inventorship. It doesn't have the misappropriation elements, I think, that might have come with a state law claim or any of those claims. It's simply co-inventorship. And to be a co-inventor, the contribution that Bebo had to make had to be significant to the inventive process. He had to conceive of something, and what he had to conceive of was the definite and permanent idea of the operative and final invention. In this case, no, that's not the standard that's before us. That's the standard before us, again, if there were competing fully developed patent applications or patents. This is not the issue that's been raised. My understanding of the co-inventorship law is that he is required to show that conception, and that has to be significant. Taveree is a case that deals with co-inventorship, and it recites that standard. Narchen is another case that deals with co-inventorship and recites that standard. The case law that I've relied on and that the district court relied on, and actually that Mr. Bebo relied on, and his counsel, all involve that same standard of requiring conception of novel and non-obvious ideas and contribution and communications of that conception. Perhaps there were flaws in the choice of law. Perhaps. In this case, however – You mentioned – can you just go back a little for the history for me? Of course. You mentioned there were other claims that came down here. This case was initiated, though, with your filing of a DJ. That's correct. Correct. So then he came in with numerous counterclaims. Is that how this went down? Yes, Your Honor. We came in with a DJ action, and Mr. Bebo – And your DJ dealt with the inventorship issue. It was entitled in validity because at that point we weren't sure what he was going to be claiming. As we went through kind of early motions practice and early practice with the judge, Mr. Bebo represented, his counsel represented, that the only issue that we were dealing with was inventorship or co-inventorship, actually, not sole inventorship. And then to answer your point, yes, he came back with a host of state law counterclaims, unjust enrichment, fraud, a contract claim, Sherman antitrust claim, and an infringement claim. Those were subject to a motion to dismiss. The district court judge dismissed them. Mr. Bebo refiled our DJ action. Mr. Bebo refiled an answer, restated a lot of those state law claims. He filed another motion to dismiss, and those claims were dismissed and are not the subject of this appeal. Mr. Bebo just hasn't appealed that ruling by the district court. So we have Mr. Bebo. He claims that he invented the regulator. He claims that he invented the gauge protector. But as I stated, the 2004 disclosure doesn't tell us that the patent that Mr. Dukowicz referred to actually doesn't show that either. What it shows is a partial encasement, and this is the words of the patent, a partial encasement of the valve between the regulator and the tank. And you can see that in the patent. You can look at the words. It's a partial encasement. It's not an encasement of the entire gauge regulator, and it doesn't even mention the word gauge, nor is it focused on protection of the gauge and the regulator. And the last point that I want to address is Mr. Bebo spent a good amount of time in his brief and also in front of this court talking about Lennox's inventive process and how it goes to credibility. And this is a different case because it's not a he said, she said issue. They had to provide corroborating evidence of inventorship, and Lennox's inventive process doesn't matter. Again, the case law is clear on that. Narchman is a case. Taveri is a case. Symantec, those are all cases where the court has said, well, the inventive process of the named inventors is a different matter. It doesn't actually address the contribution of the alleged omitted co-inventor. And it's the same situation here. Whatever Lennox provided or didn't provide doesn't actually have any relevance to what Mr. Bebo needed to show the district court. He needed to show the district court corroborating evidence of the novel, of his conception of the novel in non-obvious parts of the Lennox patent, communications of those conceptions, and he just didn't do it. The court has no further questions. Thank you. Thank you, Ms. Harris. Mr. Dukowitz? Your Honor, I don't know. Mr. Dukowitz, the other side of the issue that I raised with Ms. Harris. It's clear that your client did not undertake his own patent application or to participate in the system, and it seems pretty clear from the record that the entirety of the development of the device was not his. This relationship of conversations back and forth raises interesting questions, but the law is careful to provide a, not a bright line, but enough of a barrier so that ordinary, though here's a need which needs to be fulfilled, doesn't turn the person who raises the need. Into an inventor of the method of fulfilling it. The closer questions that are raised, it seems to me, were before the district judge and were reviewed. The issues of corroboration that he raised, I don't agree, were interference context, corroboration. At the same time, it looked to me as if he was wondering if, in retrospect, there was a stretching, an elaboration of an informality that didn't merit full development into joint invention. How does that fit into this case? I think, as counsel argued, she said the issue is whether it was a handle or a gauge protector. If you look at the picture on appendix 327, which is the drawing, the rendered drawing dated 9304 by Mr. Catron, how is that handle and that gauge protector not one and the same? Especially if you use the language that you take the handle and you encase the regulator. If you look at that drawing, there is an encasement of the regulator by the handle. Now, whether you call it a protector, a defender, or just simply a handle encasing the regulator, it is a way to attach the handle to the tank. And I think that's the issue that the judge did not see. I think that's an issue that Mr. Beeble provided to Lennox, and Lennox saw it as a solution to what they felt was a long-felt need by the general public. In other words, how do you protect it? Well, if you encase the regulator with plastic, you protect it. Well, you can call it a gauge protector. You can call it anything you want. But the fact of the matter, it doesn't change that it is a handle that encases the regulator. And I think that's where Mr. Beeble's case should have turned rather than saying, well, Mr. Beeble got a patent on a flat handle. Therefore, he didn't have anything to do with the Lennox patent. And when he did tell Lennox in numerous conversations about his developed idea of encasing the regulator in plastic, and that's what they did. And it's nothing more than that, if you look at the drawing, 327. And I think your concern is that the court did the right thing by not considering this part of the language of the disclosure document. And I think that's an error. I think the court didn't go far enough in considering. It stopped short in its citation of the really important part of the quote, where it discussed how you put this regulator around – you put this handle around the shell of the regulator. And that's what I think the error was. Anything else you need to tell us? I don't see the – I see the light is yellow, so I'm not sure I'm out of time. No, I think that's – I think that's it, Your Honor. Okay. Thank you. Thank you. Thank you both. The case is taken under submission.